---

### Bᴀʀʙᴏᴜʀ Lᴇᴡɪs

*v.*

### Gᴇᴏʀɢᴇ B. Pᴇᴀsᴇ.

Pᴀʏᴍᴇɴᴛ—*right as to its application.* Where, at the time of sending a draft, the sender was, as a member of a firm, indebted to the party to whom the draft was sent, in several notes, most of which were then due and bearing interest, and also, in two individual notes, not then due, and maturing some time afterwards, and which bore no interest before maturity, and the debtor, at the time of sending the draft, directed the creditor to hold the amount until advised as to its application, and stating that his partner would send a statement of matters in a few days, and such partner did afterwards write, giving a statement as to the firm notes, with their interest up to the time of sending the draft, and the other debtor made no other direction for several months after, and not until the creditor had applied

the draft upon the firm notes, it was *held*, that the creditor was, under the circumstances, justified in making the application he did, and being rightfully made, it could not be repudiated by the debtor afterwards.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, and Mr. EDWARD P. KIRBY, for the plaintiff in error.

Messrs. EPLER & CALLON, for the defendant in error.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a suit brought by Pease, against Lewis, as indorser upon two promissory notes for $1000 each, made by one L. E. Dyer to Lewis, bearing date May 18, 1871, and payable one year after date, with interest at the rate of ten per cent per annum after maturity. The plaintiff below recovered for the full amount of the notes, and the defendant sued out this writ of error.

In the fall of 1871, Dyer, the maker, sent to Pease, the owner of the notes, the sum of $1500 in a draft upon a Boston house, which was subsequently paid; this sum, plaintiff in error claims, should have been credited upon the notes, and the sole controversy is, in respect to the application of this money, whether it should have been applied upon these notes.

Said draft was sent in a letter, as follows:

"ST. LOUIS, *Sept.* 27, 1871.

"GEORGE B. PEASE, ESQ.,

    32 *Fort street west, Detroit, Mich.:*

"DEAR SIR—Enclosed in this I send you a draft drawn by J. F. Comstock & Co., of this city, upon Fogg Bros. & Co., Boston, Mass., for the sum of fifteen hundred dollars. Please hold the same, and I will in future advise you how to apply the same upon the debts due you by me. Mr. Lawrence will send you a statement of matters in a few days.

        Very truly yours,     L. E. DYER."

Dyer gave no subsequent directions to Pease, or any one, as to the application of the money, until May 18, 1872, the date of the maturity of the notes. On that day, he went to the cashier of the First National Bank of Memphis, to whom the notes had been sent for collection, and at which bank they were payable, and told him that he made application through him of the $1500 he had deposited with Pease, and tendered $500 as the balance due on the notes, and demanded the surrender of the notes. The cashier refused to accept that amount and surrender the notes.

The testimony of Pease is, that he holds several notes against the firm of F. S. Lawrence, Jr. & Co., a firm which was composed of F. S. Lawrence and Dyer, which were given for money loaned by him to them to effect a compromise with their creditors in New York City; that the draft was received by him October 4, 1871, and he applied the money on these notes, which he holds subject to the order of Dyer. That at his house in Detroit, Dyer stated to him that the first money he sent to witness was to be applied on these notes.

Dyer testifies that he was away from home in February and the early part of March, 1872, and when he returned, he found awaiting him a letter from Pease, dated January 31, 1872, in which was inclosed a statement of notes upon which he said he had made an application of the money, and also the notes themselves, amounting in the aggregate to the sum of $1530; the notes were those of the firm of F. S. Lawrence, Jr. & Co., nine in number, bearing date, part January 10, 1871, and a part February 23, 1871, falling due at various dates between that time and November 23, 1871, when the latest fell due, all payable to Pease, with ten per cent per annum interest from date; that he immediately wrote to Pease repudiating his right to make such application of the money, and returning the notes. That on February 24, 1871, he bought out the interest of F. S. Lawrence, Jr. & Co., and assumed the debts of the firm.

F. S. Lawrence testifies, that he is the son-in-law of Pease; that after selling out his interest in the firm to Dyer, in Feb-

3—85TH ILL.

ruary, 1871, he remained with him as his book-keeper; that he saw Dyer write the letter to Pease dated September 27, 1871, or else Dyer showed him the letter after it was written,— he does not remember which; that from the directions contained in that letter relative to sending a statement of matters to Pease, and from his previous understanding with Dyer as to how the first money collected should be applied, he made up and sent to Pease a statement in writing, which was introduced in evidence. This statement purports to be one, of the dates, amounts and times of falling due of eight several notes precisely corresponding with the said nine notes of F. S. Lawrence & Co., except the last one is omitted, and to cast the interest on each note up to September 26, 1871, at ten per cent, the footing up of all which, principal and interest, is $1382.83. Subjoined whereto is, " September 26, credited on the second note, due November 23, 1871, $117.17; October 1, credited on the second note, due November 23, 1871, $30; total remittance, $1530."

This is all the statement contained. Lawrence testified that Dyer sold his goods at St. Louis shortly before sending the $1500, and soon after left, and never returned to do business; that he had no express direction, from Dyer to send the statement to Pease; that he sent it because of the directions in Dyer's letter to Pease, which Dyer showed him, and of which he was aware, and because of previous conversations with Dyer, and because he had always understood that the first money collected should be sent to Pease in payment of the notes mentioned in the statement.

It was from thirty to sixty days after the draft was sent, when he sent the statement. He did not tell Dyer of it, he having left St. Louis. Dyer explains as to this statement, that he had always promised Pease that he would send him a statement as to how his business turned out, and he meant that Lawrence should send a statement as to that. He states that Lewis was only an accommodation indorser for him upon the notes in suit. This is the substance of all the testimony upon the subject of the application of this $1500.

At the time of the receipt of the draft by Pease, all the F. S. Lawrence, Jr. & Co.'s notes were due, except the last two for $200 each, which would fall due October and November 23, 1871. They were all bearing interest at ten per cent. The two notes in suit would not fall due until May 18, 1872, and carried no interest until they should become due.

Dyer's letter to Pease inclosing the draft was, to hold the money, and he would, in future, advise him how to apply the same upon the debts due him by Dyer, and that Lawrence would send him a statement of matters in a few days. Lawrence's subsequent statement sent to Pease, computing the interest on these F. S. Lawrence, Jr. & Co.'s notes up to the time of sending the draft, and balancing the amount found due with the " remittance," would seem to be a plain signification to Pease, that the money was to be applied on these firm notes. Pease waited until January 31, 1872, some four months, and having heard nothing further from Dyer himself, he sends, inclosed in a letter to him, these notes of F. S. Lawrence, Jr. & Co., as having been satisfied by the application of this $1500 to their payment. We think that, under the circumstances, Pease was justified in making such an application of the money. Hearing nothing more from Dyer for such a length of time, he might well suppose that the statement of Lawrence was the future advice contemplated by Dyer in his letter, and was all that he purposed to give. It seems to have been previously understood among the parties, that the money was to apply upon these firm notes. It was the apparent interest of Dyer to have it so applied; and in view of all the circumstances, Pease might reasonably consider it the wish of Dyer that the money should be applied in extinguishment of these firm notes, which were due and drawing ten per cent interest, rather than to be kept idle in his hands, to be applied on indebtedness which would not become due until May 18, 1872, and which drew no interest till then. Dyer's subsequent repudiation of this application would not avail, as it would come too late after Pease had properly once made the application.

The instructions complained of we regard as well enough, in view of the evidence, and that there is no well-founded objection to them, as not properly presenting the law of the case to the jury, as applicable to the facts.

The judgment is affirmed.

*Judgment affirmed.*